UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRENDA BUTLER,

    Plaintiff,

  v.

3M COMPANY, *et al.*,

    Defendants.

:

:

:

Case No. 2:24-cv-01587
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

This matter is before the Court on the motion to amend the complaint filed by Brenda Butler (ECF No. 46). Defendants 3M Company and Arizant Healthcare Inc. responded (ECF No. 51), and Ms. Butler filed a Reply (ECF No. 54). This matter is now ripe for consideration. For the reasons set forth below, the Motion is **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**

This case is one of many product liability actions consolidated for coordinated pretrial proceedings as part of a multidistrict litigation ("MDL") against 3M and its wholly owned subsidiary, Arizant Healthcare. (ECF No. 4, PAGEID # 12); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, MDL No. 15-2666 (D. Minn.). The MDL plaintiffs generally assert that they underwent orthopedic-implant surgeries and thereafter contracted joint infections; they allege the infections were caused by the use of the "Bair Hugger" system—a convective (or "forced-air") patient-warming device manufactured and sold by 3M—during their

surgeries. (ECF No. 51, PAGEID # 356); *In re Bair Hugger*, MDL No. 15-2666, ECF No. 1, at 2 (D. Minn. Dec. 11, 2015).

In May 2016, the MDL plaintiffs "filed a Master Long Form Complaint and a Master Short Form Complaint as administrative devices to set forth potential claims" that could be asserted against Defendants.[1] *In re Bair Hugger*, MDL No. 15-2666, ECF No. 46, at 1–3 (D. Minn. May 25, 2016). The MDL court authorized future plaintiffs to file their own version of the Short Form Complaint articulating in an abbreviated manner their individualized "injury, the dates, the home state, the plaintiff's date of birth, the basic theories of liability, and the suggested jurisdiction for remand." *Id.* Future plaintiffs were also given "the express right to file and serve an Amended Complaint, upon the showing required by the relevant Federal Rules of Civil Procedure and any applicable court order, … which more fully sets forth the facts specific to their case, the causes of action and allegations … and theories of liability alleged." *Id.*

Ms. Butler directly filed her Short Form Complaint in the MDL on August 4, 2023. (ECF No. 1.) Therein, Ms. Butler states that she underwent surgery at OhioHealth Berger Hospital in Circleville, Ohio, in September 2014 and that her doctors used the Bair Hugger system during her procedure. (*Id.,* ¶ 7.) Ms. Butler

---

[1] The MDL court established (1) July 29, 2016, as the deadline by which the MDL plaintiffs could amend the Master Complaints without leave of court; and (2) April 21, 2017, as the deadline by which the MDL plaintiffs could move to amend the Master Complaints to include punitive damages claims. *In re Bair Hugger*, MDL No. 15-2666, ECF No. 175 ("MDL Scheduling Order"), at 2 (D. Minn. Jan. 5, 2017); *see also id.*, ECF No. 27, at 1 (D. Minn. Mar. 24, 2016).

asserts that "[c]ontaminants introduced into [her] open surgical wound as a direct and proximate result of use of the Bair Hugger during the subject surgery" caused her to develop a joint infection that required "numerous procedures[,] … intervention, management, and surgeries." (*Id.*, ¶¶ 8–9.) She alleges various claims under common law and Ohio and Minnesota consumer protection statutes. (*Id.*, ¶ 12; *id.*, PAGEID # 4.)

Ms. Butler's case was selected as an MDL bellwether action. *In re Bair Hugger*, MDL No. 15-2666, ECF No. 2386, at 5 (D. Minn. Dec. 28, 2023). In April 2024, the MDL court transferred 28 bellwether cases, including Ms. Butler's action, to the district courts where they would have been filed absent the direct filing order previously issued by the MDL court. (ECF No. 10, PAGEID # 36.) Accordingly, Ms. Butler's case was transferred to this Court. (*Id.*, PAGEID # 43.)

Shortly thereafter, the parties submitted a Joint Rule 26(f) Report, in which Ms. Butler foreshadowed her intent to seek "leave to submit an Amended Complaint that will comply with Ohio law and avoid a likely FRCP 12(c) motion to dismiss." (ECF No. 36, PAGEID # 218.) In response, Defendants argued that the deadline to further amend complaints was set by the MDL court in the MDL Scheduling Order and had passed, such that Ms. Butler could not amend without showing good cause. (*Id.*, PAGEID # 218–19.) By order of the Court, the parties subsequently filed a revised Rule 26(f) Report that reflected only their agreement that any motion to amend would be due on June 10, 2024. (ECF No. 38, PAGEID # 234.) The Court

entered a scheduling order ("Ohio Scheduling Order") memorializing the amendment deadline. (ECF No. 40, PAGEID # 243.)

On June 7, 2024, Ms. Butler filed the instant Motion seeking to amend her Complaint (ECF No. 46). She represents that her proposed Amended Complaint "maintains the same causes of action … against the same Defendants from the original complaint" and serves to "conform" the "purely administrative" Short Form Complaint to her own individualized circumstances. (*Id.*, PAGEID # 280.) Defendants oppose Ms. Butler's request, which they characterize as part of a "broader strategy to use the transferred bellwether cases to reopen and relitigate general discovery outside of the MDL court." (ECF No. 51, PAGEID # 355.) They contend that Ms. Butler should have more timely sought leave to amend and that her proposed amendments are futile. (*Id.*, PAGEID # 360, 364.)

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 15(a)(2), when a party seeks leave to file an amended pleading, "[t]he court should freely give leave when justice so requires." This rule, which allows a liberal policy in favor of granting amendments, "reinforce[s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 936 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)). Thus, trial courts enjoy broad discretion in deciding motions for leave to amend. *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). In exercising its discretion, a trial court may consider such factors as "undue delay,

4

bad faith or dilatory motive on the part of a movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

However, if a party moves to amend after the deadline established in a scheduling order, she "must meet the higher threshold for modifying a scheduling order found in [Federal Rule of Civil Procedure] 16(b)." *Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008). The party must "show good cause under Rule 16(b) for the failure to seek leave to amend prior to the expiration of the deadline before [the court] will consider whether the amendment is proper under Rule 15(a)." *Hill v. Banks*, 85 F. App'x 432, 433 (6th Cir. 2003). "[T]he touchstone of the good cause inquiry under Rule 16(b) is whether the moving party acted diligently in attempting to meet the deadline set forth in the pretrial order." *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06-cv-0569, 2007 WL 1683668, at *2 (S.D. Ohio June 8, 2007) (Kemp, M.J.). Courts are to decide whether good cause exists under Rule 16(b) "before turning to Rule 15(a)'s more generous standard." *Ousley v. CG Consulting, LLC*, 339 F.R.D. 455, 459 (S.D. Ohio 2021) (Jolson, M.J.), *report and recommendation adopted*, 339 F.R.D. 455 (S.D. Ohio 2021) (Morrison, J.).

### III. ANALYSIS

#### A. Rule 16 Determination

##### 1. Applicability of Rule 16

The deadline for filing motions seeking leave to amend a pleading in this case

5

was June 10, 2024. (Ohio Scheduling Order, PAGEID # 243.) Ms. Butler timely sought leave to amend her Complaint three days before that date. (ECF No. 46.) But Defendants urge the Court to analyze Ms. Butler's request under Rule 16 because the amendment deadlines established by the MDL Scheduling Order (July 29, 2016 and April 21, 2017) have passed. (ECF No. 51, PAGEID # 354–55 (citing MDL Scheduling Order); *see also* ECF No. 36, PAGEID # 218.) Ms. Butler responds that she filed her case in August 2023, after the MDL deadlines had elapsed, and that the MDL court specifically contemplated amendments to pleadings by future plaintiffs. (ECF No. 54, PAGEID # 387.)

Several courts have been presented with *Bair Hugger* plaintiffs seeking to amend their individual Short Form pleadings. (ECF No. 51, PAGEID # 360–61; ECF No. 54, PAGEID # 388; ECF No. 55, PAGEID # 395; ECF No. 56, PAGEID # 412–13.) At least one has held that the MDL Scheduling Order "does not establish a deadline for individual amendments," such that a motion to amend would "likely not [be] subject to Rule 16." (ECF No. 55); *Robinson v. 3M Company, et al.*, No. 8:24-cv-00828, ECF No. 49, PAGEID # 348 (M.D. Fla. July 22, 2024). Conversely, the MDL court concluded in an individual action that "any present motion to amend a complaint in this MDL is governed by Rule 16" and that "[p]laintiffs in the MDL seeking to amend a complaint after July 29, 2016 must proceed under Rule 16 and its good cause standard." (ECF No. 56, PAGEID # 412); *Trombley v. 3M Co., et al.*, No. 16-cv-4159, ECF No. 26, at 2–3 (D. Minn. Jan. 3, 2019).

The Court need not resolve this fray because even assuming (without

6

deciding) that Rule 16 applies to Ms. Butler's request to amend, she has met the good cause standard.

### 2. Good Cause to Amend

A movant may show good cause by demonstrating "diligen[ce] in attempting to meet the requirements of the scheduling order." *Ousley*, 339 F.R.D. at 460. With respect to the MDL Scheduling Order, Ms. Butler commenced her case in August 2023, more than six years after the last MDL amendment deadline in April 2017 had passed. (ECF No. 1); MDL Scheduling Order, at 2. There was no possibility that the MDL Scheduling Order could have "reasonably be[en] met despite the diligence of the party seeking the extension." *See Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (citation omitted); *see also, e.g.*, *Trombley*, ECF No. 26, at 3 (D. Minn. Jan. 3, 2019) (observing the same in another *Bair Hugger* bellwether action). Given that Ms. Butler's action was not filed until after the MDL deadline for amendments had passed, it would be unfair to require strict adherence to that scheduling order.

There is no dispute that Ms. Butler moved to amend her Complaint before the deadline established by this Court. In May 2024—a month after the case was transferred to this Court—Ms. Butler indicated her intent to amend her Complaint. (ECF No. 36, PAGEID # 218.) She filed her motion to amend in June 2024. Although the Court agrees with Defendants that Ms. Butler was not perfectly diligent in that she could have moved to amend earlier, she was sufficiently diligent to satisfy Rule 16(b).

7

### 3. Prejudice to Defendants

"Delay, standing alone, is an insufficient basis for denying leave to amend, and this is true no matter how long the delay." *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 409 (6th Cir. 2000). Instead, "the delay must have resulted in prejudice to the party opposing the motion." *Tefft v. Seward*, 689 F.2d 637, 639 n.2 (6th Cir. 1982). Here, Defendants contend that granting Ms. Butler leave to amend "would unduly prejudice 3M should it provide a basis for reopening general discovery outside of the MDL." (ECF No. 51, PAGEID # 362.) They argue that "her amendment will undo significant work done in the MDL court by broadening the scope of discovery in this Court to include more than just case-specific fact and expert discovery." (*Id.*, PAGEID # 363.) As a result, "3M would be faced with the significant burden of responding to expected new general discovery and related motion practice, which is unduly prejudicial to 3M after it structured its defense in accordance with the general discovery conducted in the MDL court and the MDL court's rulings." (*Id.*, PAGEID # 369.)

The Court is not persuaded by these arguments. Putting aside the inherent speculation surrounding the putative discovery, the Court observes that discovery is still underway, and the dispositive motions deadline has not passed. (Ohio Scheduling Order, PAGEID # 245); *see Abu-Hatab v. Blount Mem'l Hosp., Inc.*, No. 3:06-CV-436, 2008 WL 4510035, at *2 (E.D. Tenn. Oct. 1, 2008) ("Significant prejudice usually results where a motion to amend is made after either the discovery deadline has passed or a dispositive motion has been filed."). The parties

8

have time to prepare or modify their case in light of an amendment, and if they need additional time for discovery, they may file a motion to that effect. *See Woods v. Cornwell*, No. 418CV00082JHMHBB, 2019 WL 13235542, at *2 (W.D. Ky. Feb. 25, 2019) ("The only prejudice [defendants] identify is the need for additional discovery in the case to meet the new allegations, but do not argue that an extension of the discovery deadline cannot remedy any prejudice."). And though Defendants represent that general discovery has closed in the MDL (ECF No. 51, PAGEID # 369), the relevant discovery at this juncture relates to Ms. Butler's individual case.

Another factor in determining the degree of prejudice is the substantive law underlying the proposed amendment. A review of the proposed Amended Complaint shows that the claims therein are the same as those initially asserted in Ms. Butler's Short Form Complaint; the only addition is a Count XI, a claim for misrepresentation in violation of the Ohio Product Liability Act ("OPLA"). (ECF No. 46-1, PAGEID # 326–27.) Thus, amendment will not require Defendants to develop a new litigation strategy. Moreover, Defendants were aware of the potential for amendment by virtue of the MDL court's explicit authorization of the practice for future plaintiffs.

Defendants assert that Ms. Butler's proposed Amended Complaint adds "a bevy of new factual allegations" that are "different from those in the operative Master Complaint" and not "specific to [her] claims or the facts of her case." (ECF No. 51, PAGEID # 358, 369.) But many (if not all) of her "new facts" appear to come

9

from the MDL discovery—including "at least 14 new studies" and "quotes from depositions taken in the MDL or related litigation." (ECF No. 51, PAGEID # 358, 362.) And, to the extent these allegations were not part of the MDL discovery, they relate to Defendants' knowledge that the Bair Hugger device was defective and their failure to recognize such, (*see, e.g.*, ECF No. 46-1, ¶¶ 48, 51–53, 58–60, 69–72, 82–84, 102), which may be relevant to Ms. Butler's punitive damages claims. The MDL court specifically ruled that punitive damages discovery would be allowed. *See Robinson*, ECF No. 49, PAGEID # 356 (M.D. Fla. July 22, 2024) (citing *Jones v. 3M Co., et al.*, No. 23-cv-1425, ECF No. 34, at 2–3 (D. Minn. Mar. 7, 2024)).

The Court acknowledges that MDLs are efficient and centralizing devices in the world of mass tort litigation. However, bellwether trials are designed to, among other things, test different claims and litigation strategies. *See Abrams v. Nucor Steel Marion, Inc.*, 694 F. App'x 974, 977 (6th Cir. 2017). Ms. Butler will be bound by the outcome of this case and is entitled to select which claims to assert in her own case. *See Baxter v. Lincoln Elec. Co.*, 2012 WL 112526, at *4 (N.D. Ohio 2012); *In re: Soc'y Ins. Co. Covid-19 Bus. Interruption Prot. Ins. Litig.*, No. 20 C 5965, 2021 WL 3290962, at *4 (N.D. Ill. Aug. 1, 2021) ("The bellwether plaintiffs clearly have the right to choose which claims to assert in their own cases. Neither this Court nor [the defendant] should presume to direct that choice, at least for a proposed first amendment to their respective complaints.").

Thus, pursuant to its "broad discretion in deciding motions for leave to amend," the Court finds that the good cause standard articulated in Rule 16(b) has

10

been satisfied.

### B. Rule 15 Determination

Turning to Rule 15(a), Ms. Butler has partially satisfied this standard. The Court finds no evidence of bad faith or dilatory motive on her part. And, as discussed above, any prejudice to 3M and Arizant Healthcare would not be undue.

Futility, however, requires more consideration. "Before granting leave to amend a complaint, a court need make only a minimal assessment of the merits of any proposed new claims ... Namely, it must conclude that the proposed claims are not 'clearly futile' due to facial lack of merit, frivolousness, lack of jurisdiction, or other obvious legal defect." *Yoder v. City of Bowling Green, Ohio*, No. 3:17 CV 2321, 2018 WL 1900460, at *2 (N.D. Ohio Apr. 20, 2018) (citation omitted). A motion for leave to amend may be denied for futility if the pleading as amended could not withstand a motion to dismiss. *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir.2005) (citation omitted).

Ms. Butler proposes to amend her Complaint to assert 15 causes of action, comprised of (1) Minnesota statutory claims under the Minnesota Prevention of Consumer Fraud Act ("MPCFA") (Count VI), the Minnesota Uniform Deceptive Trade Practices Act (Count VII), the Minnesota Unfair Trade Practices Act (Count VIII), and the Minnesota False Advertising Act (Count IX); (2) Ohio statutory claims under the OPLA (Counts III, IV, and XI), the Ohio Consumer Sales Practices Act ("OCSPA") (Count X), and Ohio's statute concerning the implied warranty of merchantability (Count V); and (3) common law claims for negligence, gross

11

negligence, unjust enrichment, misrepresentation (Minnesota), fraudulent misrepresentation (Minnesota), and fraudulent concealment (Minnesota) (Counts I, II, XII, XIII, XIV, and XV). (ECF No. 46-1, ¶¶ 125–269.) The Court evaluates these claims below.

### 1. Minnesota Statutory Claims

Defendants argue that Ms. Butler cannot pursue claims under the various Minnesota consumer protection statutes (Counts VI–IX) because she is an Ohio resident who underwent surgery in Ohio. (ECF No. 51, PAGEID # 364.) Ms. Butler does not address this issue in her Reply.

"As a general rule, plaintiffs must either be residents of, or suffer injury in, the particular state under whose laws they seek to bring suit." *Siriano v. Goodman Mfg. Co.*, No. 2:14-cv-1131, 2015 WL 12748033, at *2 (S.D. Ohio Aug. 18, 2015) (Smith, J.) (citation omitted). Inversely stated, "named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury." *Id.* (citation omitted); *see also Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1157 (D. Minn. 2023) ("In general, there is a presumption against the extraterritorial application of a state's statutes."). In *Rouse*, buyers of allegedly defective tile grout brought a class action against the manufacturers, asserting claims for violations of Minnesota consumer fraud statutes. *Id.* at 1151. Because the buyer plaintiffs resided out of state and the damages occurred in their states of residence, those claims were dismissed for lack of standing. *Id.* at 1157.

Ms. Butler seeks to bring claims under Minnesota consumer protection

statutes. (ECF No. 46-1, ¶¶ 181–203.) To have standing, she must allege either that (1) she is a resident of Minnesota or (2) her complained-of injury occurred in Minnesota. But it is undisputed that she is a resident of Ohio who was injured during surgery at an Ohio hospital. (ECF No. 1, PAGEID # 1–2.) Thus, she lacks standing to assert these claims, such that "the futility of [her] amendment is so obvious that it should be disallowed." *Bear v. Delaware Cnty., Ohio*, No. 2:14-CV-43, 2015 WL 1954451, at *3 (S.D. Ohio Apr. 28, 2015).

### 2. Ohio Statutory Claims

Defendants next take issue with Ms. Butler's claim under the OCSPA, arguing that it is futile because it is preempted by the OPLA. (ECF No. 51, PAGEID # 367.) In response, Ms. Butler does not dispute preemption but asserts that she may plead both claims in the alternative. (ECF No. 54, PAGEID # 380.)

The Court agrees. Federal Rule of Civil Procedure 8(d)(2) permits Ms. Butler to make alternative claims at this stage of litigation, regardless of consistency. *See Chapman v. Tristar Prod., Inc.*, No. 16-CV-1114, 2016 WL 6216135, at *4 (N.D. Ohio Oct. 25, 2016) (citing Fed. R. Civ. P. 8(d)(2)). She seeks damages for physical pain and suffering (which are not provided for under the OCSPA) and economic loss (which are not provided for under the OPLA). Accordingly, Ms. Butler's proposed OCSPA claim is not obviously futile. *See, e.g., Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 628 (N.D. Ohio 2016) (declining to dismiss OCSPA claim when such claim "set[ ] forth an alternative theory of recovery" compared to OPLA claim).

13

### 3. Common Law Claims

Defendants' argument regarding the futility of Ms. Butler's common law claims is twofold—first, that the OPLA abrogates common law claims for negligence and strict liability in product liability cases; and second, that Ohio substantive law applies to this dispute, meaning that the three common law claims designated "Minnesota" cannot succeed. (ECF No. 51, PAGEID # 365–66.)

As to the first argument, the same reasoning detailed in the context of Ms. Butler's OCSPA claim applies to her common law claims. Although she cannot recover on both an OPLA claim and common law claim under the same set of facts, she may proceed with both of her claims simultaneously at this point in the case. *See Darwish v. Ethicon, Inc.,* No. 1:20 CV 1606, 2020 WL 7129582, at *3–4 (N.D. Ohio Dec. 4, 2020) (permitting common law negligence claim for economic loss damages to proceed with OPLA claims). Her common law claims are not clearly futile.

As to the second argument, the MDL court discussed the appropriate choice-of-law rules for cases that were directly filed before it:

> [T]he Court will apply Minnesota choice-of-law rules unless Plaintiff clearly identifies the following information in the initial complaint: (1) current residence; (2) date and location of surgery plaintiff claims Bair Hugger was used; and (3) the appropriate venue where the action would have been filed if direct filing in this District were not available. If the Plaintiff identifies that information, then the choice-of-law rules from the appropriate venue shall apply.

*In re Bair Hugger*, MDL No. 15-2666, ECF No. 37, at 1–2 (D. Minn. Apr. 29, 2016). In her initial Complaint, Ms. Butler identifies the information contemplated by the

14

MDL court—she states that she is an Ohio resident who underwent surgery in Circleville, Ohio, and that the Southern District of Ohio is the proper venue absent the direct-filing order. (ECF No. 1, PAGEID # 1–2.) As such, and because this Court sits in Ohio, Ohio's choice-of-law rules apply.

In another *Bair Hugger* action brought by an Ohio resident who was allegedly injured in Ohio, the MDL court used Ohio's choice-of-law rules to determine that Ohio substantive law should apply. *Axline v. 3M Co.*, No. CV 17-511 (JNE/DTS), 2018 WL 4300535, at *2 (D. Minn. Sept. 10, 2018), *aff'd*, 8 F.4th 667 (8th Cir. 2021). This Court finds the reasoning in *Axline* persuasive. Like the plaintiff in *Axline,* Ms. Butler's injury occurred in Ohio, so Ohio substantive law applies unless "some other state has a more significant relationship ... to the occurrence and the parties." Restatement (Second) of Conflict of Law § 146. Ms. Butler does not address whether Minnesota law has a more significant relationship to her claims, nor does she identify a conflict between Ohio law and Minnesota law. *See Mecanique C.N.C., Inc. v. Durr Envtl., Inc.*, 304 F. Supp. 2d 971, 975 (S.D. Ohio 2004) (Marbley, J.) ("If the two states would use the same rule of law or would otherwise reach the same result, it is unnecessary to make a choice of law determination because there is no conflict of law."). Accordingly, Ohio law applies to Ms. Butler's common law claims.

With this in mind, to the extent Ms. Butler wishes to maintain the three common law claims that are designated "Minnesota" (Counts XIV–XV), she must restate those claims as brought under Ohio law.

15

## V. CONCLUSION

Ms. Butler's Motion to Amend Complaint (ECF No. 46) is **GRANTED in part** and **DENIED in part**. Ms. Butler is **ORDERED** to file a revised Amended Complaint asserting her common law claims under Ohio law and omitting Counts VI–IX **WITHIN THIRTY (30) DAYS** of the date of this Opinion and Order. The parties are further **ORDERED** to submit a revised case schedule **WITHIN FOURTEEN (14) DAYS** of the date of this Opinion and Order, setting forth revised deadlines relating to discovery, dispositive motions, and other similar events.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE
UNITED STATES DISTRICT COURT**